Thank you. Call the second case, please. Case number 10-2028, People v. Demetrius Hill. Will the counsel please identify themselves for the record? Your Honor, this is the State's Attorney Charles Prochaska on behalf of the People. Good morning. Deepa Punjabi. I represent the defendant appellant, Demetrius Hill. Good morning to you both. And Ms. Punjabi, go right ahead. Thank you. My intention today was to focus on argument one, which was the ineffective counsel argument. But I'll be happy to answer the court's questions on any of the other arguments. And if I could reserve a couple of minutes for rebuttal arguments. Sure. Thank you. So Demetrius Hill was convicted of unlawful possession of a weapon by a felon at a bench trial. And on appeal, he argues that his counsel was ineffective for failing to file a motion to quash his arrest and suppress his post-arrest statement to the police. In this case, just a brief recitation of the facts. I think we're well familiar with the facts of the case. Thank you. So at trial, during closing arguments, the trial judge actually stated on the record that he thought this arrest was probably improper. He questioned counsel on if a motion, he questioned him repeatedly on if a motion to quash the arrest had been filed. He was clearly inviting counsel to make this motion. He asked for briefing on the issue. He even explained to counsel why he thought the arrest could have been improper. And yet, counsel never made the motion. And given this trial judge's comments, it's very difficult to see how had this motion been filed. It would not have enjoyed at least a reasonable probability of success. And had the motion been filed, I'm sorry, had it been granted and that statement had been suppressed, the state would in all likelihood not have been able to proceed against the defendant as the statement really was the most damaging piece of evidence and there really wasn't anything else connecting the defendant to that gun. And so that's why appellant is asking that this case be sent back for the filing of this motion. He's just asking for a remand so that this probable cause issue that clearly troubled the judge so much can be addressed. Now, the inquiry for a reviewing court in these types of claims is whether the motion would have stood a reasonable probability of success had it been filed and if the suppression motion was granted, whether that would have changed the outcome of the trial. And Illinois courts have continually held that courts that are reviewing these types of claims should not be engaging in a detailed analysis of whether probable cause existed or whether a defendant will ultimately prevail on a suppression motion, but they should only look at whether the motion stood a reasonable chance of succeeding. And again, here you have the judge saying on the record, I don't think there was authority for this arrest, but I can't do anything about that because there's no motion before me. Tate argues that one of the prongs of this argument is that once the weapon was found in the middle bedroom under the bed, that under the circumstances, he would have been subject to finding a probable cause to arrest at that point anyway, which would have been an attenuation of whatever taint would have existed from the fact that he was simply transported from the scene of his traffic stop to the Flournoy address. Sure. And there are a couple of points to make regarding the state's argument. First of all, the issue of intervening probable cause, as you noted, is just one of many attenuation factors. And wouldn't that be putting the cart before the force? That's precisely how I would put it. I would say that this kind of detailed attenuation analysis is premature. The state can raise an attenuation defense if they think they have one once a motion has been filed and the court actually makes a finding that the arrest was improper. But none of that has happened yet. And here, the revealing court's role is quite limited. It's just to see whether there's a reasonable chance that the motion would succeed. And given these judges' comments, it's hard to see how there couldn't have been. I also would submit that the recovery of the shotgun would still not be enough to provide probable cause because it was recovered in an apartment where several other people resided.  And they also found Hill's ID or something. I mean, they're trained to look for these things. And at the point that the gun was recovered, there wasn't probable cause. I would say that there wasn't probable cause. But even if you don't completely agree with that analysis, it's not the reviewing court's role in this kind of strickling claim to weigh all of the factors and make a detailed probable cause finding. And the case law on this issue, in all of these cases that discuss this issue, people v. Spann, people v. Little, people v. Stewart, it's not that there aren't facts in those records that would tend to support a probable cause finding. There are also some facts that would tend not to. But all the reviewing courts that address this issue have been clear that it's premature for us to make a detailed finding on this point. We're just looking to see if there's a reasonable chance that this motion would have succeeded. Are you aware of any cases, states suggest that somehow, and I'll ask the assistant this question, but are you aware of any cases where there was no testimony about someone either going or coming from an apartment and then being arrested about a mile away, that that would be permissible to stop that person? Well, the search warrant permitted the stop. But are there any cases that suggest that there would be probable cause where the person was a mile away without any other evidence about how the police came to stop them? I'm not aware of any cases, Your Honor. But he did have the right to stop him either way. Certainly. He had the right to stop him and search him. Does he have a right to bring him back? My position would be no. He does not have the right to bring him back. He certainly had the right to stop him and search him. He seized the keys. We're not challenging that. But there aren't any cases that you're aware of where under these particular facts, where the person is found some mile away, police recover keys, and then that person is brought back to the area named in the search warrant to then complete the search, where this was permissible? I don't believe so. I think there was a case. There was a case where a person had been seen leaving or coming and going, or they're in the premises and they can be detained during the search, but you're not aware of any sort of a dysfactorial scenario, are you? There was a case, I think, Massey S. People v. Massey S. where that occurred. But that issue was not, the lawfulness of the arrest, I don't think, was challenged in that case. So that issue was not put before the court. Let me ask you, while this would be an extension of what Summers has, and his progeny has said up to now, if you look at the decisions that talk about the three justifications for Summers, one of them is to prevent flight in the event incriminating evidence is discovered. And the state would be able to argue, at least, that that is satisfied and present in these circumstances because, having chosen to stop and search the defendant, presenting him with evidence of a warrant not only to search him but to search the apartment, if he had knowledge of contraband in the apartment, that would give him pre-knowledge and allow him to flee. And the second prong, and both of them are really addressed in US versus Bullock, the case from the Seventh Circuit, where they talk about the second prong, the defendant could alter or warn other occupants of the apartment, which could lead to efforts to destroy or conceal the evidence. Now, he's stopped on the street. He sees a warrant to search him and this apartment. They let him go. He gets on the cell phone, calls them. You know that gun that's under the bed? Get rid of it. Police are on the way. I mean, theoretically, those are the justifications, two of the three justifications, for the brief detention under Summers. And they're present here, aren't they? Well, OK, let me address those justifications. I think, if I recall correctly, the case law regarding the first justification that you mentioned, preventing the flight of occupants, I think the case law says that. Isn't that the operative word? I mean, it's been expanded. But generally speaking, an occupant is someone who's either coming or going, as opposed to someone who's stopped a mile away. That's precisely. I mean, that was the original language. Now, there's been an expansion. But has it ever gone to this level? No, it's never gone to this level. And presumably, the destruction of evidence, I think that that risk is implicated more, where you have someone at the premises or someone who's just left the premises. And I think the case law even says that the first justification you're talking about is only important insofar as the connection of the occupants to the premises is what's key here.  or the less evidence you have of a connection between the occupants and the premises, the less important that first justification becomes. And here, we really don't have evidence of much of a connection between the premises and him. Also, I would think if they were concerned with the destruction of evidence, they would have made a forced entry right away. They wouldn't have waited to drive him to the apartment. They would have, you know, Officer Hall would have radioed, I presumably would have radioed Officer Coleman and said, you know, if that was a current concern, they would have gone in right away, rather than waiting for. Well, are you implicitly arguing that it's their responsibility to make a forced entrance to a place? No, no, certainly not. Because if you are, I don't think that's an argument you want to be making. Sure, sure. And I'm not making that argument. But I'm suggesting that they didn't seem to be so concerned with the destruction of evidence here, because they waited. The question is whether there's demonstration in the record that that was what they were thinking or not. We're talking about the underpinnings of the whole series of cases, starting with Michigan versus Summers, as to why a detention can be justified. Now, it is absolutely true, and I would be surprised if the state didn't concede this, that what they're arguing in this case would be an expansion of circumstances which have been found to be within the rubric of Michigan versus Summers. Because in all the cases that I'm aware of, there has been at least some evidence in the record that the person was in the apartment in some proximity to the time of the detention. In all of the cases I looked at, there has been a trend towards expanding Summers. But none of the cases have said, look, you can detain someone, anyone, anywhere, even if there's no evidence that they just left the premises. But I think you would concede that in this 20 or so years since Summers was decided, the trend has been to incrementally expand this notion from the original finding of Summers, based upon an analysis of the three principles that were found to underlie the ability to do the detention in the first place. Certainly, I would acknowledge that there's been a trend towards expanding Summers. But I think some of the case law, I think it was US v. Bailey, the Sixth Circuit case, they expand Summers to say, in the same way that we're talking about, to say that if there's an occupant that is in the process of leaving or has just left the premises, they can be detained as soon as is practicable, even if they're not directly on the premises. But they say, look, we end on a note of caution. Summers does not give us license to detain anyone, anywhere incident to that search, even if there's no evidence that they, we don't have any evidence that Hill was at this premises. It could have been a few days. It could have been a few weeks. I mean, we really, there's nothing here that shows that he was recently there. And the state attempts to sort of speculate this away in their brief. They say, well, oh, Officer Coleman, you know, he must have radioed Officer Hall to stop him, because he must have just seen him leaving. I wouldn't have covered yourself with that. We're sort of doing another academic argument, aren't we? As far as if there were a motion to quash health, the court, in the first instance, would decide whether or not there was probable cause, or if there wasn't, or if Summers should be expanded. Or, indeed, if there wasn't, whether there was an attenuation, all of those things. Sure, this is all premature. This is all a bit premature, this level of detail. Except for the analysis that would be required to find prejudice under the second prong of Strickland. I'm sorry? Except for the analysis that's pertinent to the decision about whether there's prejudice under the second prong of Strickland. That's correct. But all it's going to show is that there's a reasonable likelihood that the outcome might have been different. Yes, it's a more limited inquiry. That's correct. Now, regarding the deficient performance prong of Strickland, here, Hill's most viable defense would have been to challenge his arrest and seek the suppression of his statement. Because, as I stated, you know, his statement really was the most damaging evidence presented. And it's really the only evidence that connected him to that gun, as opposed to any one of the other many residents of that apartment. And we know from the trial record that defense counsel's failure to file the motion did not stem from trial strategy, but rather from a misunderstanding of the law. Because this is actually kind of an unusual record that we have here. Because we actually have counsel stating on the record. No, he's saying, I understand his argument. His argument is, gee, I didn't know that an officer was actually going to admit on direct examination or cross-examination that the man was under arrest and wasn't free to leave. And your argument is, he doesn't have to wait to that point to decide to file the motion. He still could have had a basis to challenge that arrest, regardless of when the police said he was arrested or not. And he could have filed that motion mid-trial. Certainly the judge seemed receptive to hearing about it. He certainly could have asked. He could have. He could have. So when we're filing this motion was defendant's best chance of success. It really was his most viable defense. I don't think the failure to file can be justified as trial strategy. Anything further? No, if there are no further questions, Your Honor, I would ask that this court reverse Hill's convection and remand for new proceedings where a suppression motion can be filed. Thank you. Mr. Prochastna? Good morning, Your Honors. First, there was an emergency motion for Lee to cite additional authority that people had filed. And it had been not ruled on as of this morning. I checked with the clerk's office. I would just be asking for Lee to be able to argue those cases which we cited in that motion. When did you file that? It was filed last Monday, eight days ago. There was also a response that was filed by the defense. It wasn't an objection, just a response. What's the additional authority you're seeking to? Two cases, Your Honor. And I would like to argue them in the flow of this general argument before addressing Defense Counsel's Summers' position. Well, you're not going to be taking the defense by surprise. And so I would certainly allow you to argue it. In addition to filing, I did call opposing counsel last week. And she was served personally with the motion. OK. Before we get to the Summers' argument, I would like to redirect this court to the proper reasons why a defendant's detention, roadside detention, and his transport back to his apartment was proper before we even get to Summers. First of all, there was probable cause for his arrest at that time. If this court did find that he was under arrest when he was pulled over roadside, there was probable cause. But wait a minute. I can't go along with it. This theory. Go ahead. You're suggesting there was probable cause for his arrest. But there was probable cause for a search of his person for drugs. That's correct, Your Honor. And that was based on allegations in the search warrant that we don't have in front of us. But either way, I don't know how you can say there was probable cause at that point. There was certainly a search warrant to search his person. And once that was done, there were no drugs recovered. And there were keys recovered. That's it. How do you go from that, that's in the record, to tell us there's probable cause? Without arguing what must have been in a search warrant complaint that we don't have and can't consider. Of course. And which also shows there were no drugs recovered. So the probable cause to search him for those drugs, if it was in a piece of paper that's not before us, there is no evidence of probable cause. There was no drugs. He had keys. So you're saying they could have arrested him there for what offense? Your Honor, well, the probable cause was the reasonable belief that defendant was committing constructive possession of narcotics. Which hadn't been found. Correct. But that was a reasonable belief. First of all. Based upon the contents of the search warrant that we've never seen. Because defendant did not make it a part of the record. And neither did the state. That's correct, Your Honor. But where is the probable cause? What would he be arrested of at that moment? There was reasonable belief that he was committing constructive possession of illegal narcotics. I think you should move on to the next argument so we don't waste your time. Well, I just wanted to briefly bring to the court's attention, one of the cases in the motion was People v. Wolski. And it was a similar situation where there was a warrant to search the defendant's person. And then there was a warrant to search the defendant's house. Were the contents of the warrant before the court of review? I don't know, Your Honor. That would seem to be a very critical question. Because there could be a great deal of proof in the search warrant complaint and the affidavits attached that could arguably support that. But here, we have absolutely no facts as to why the search warrant was issued, what it was based upon. And what you're really doing is you're trying to get us to extrapolate from the fact that if a judge signed the search warrant, then there must have been probable cause that not only satisfied that judge, but would satisfy the law. Well, that's a first step. There is a judicial determination of probable cause made when the search warrant is signed. But it wasn't an arrest warrant, was it? That's correct. So it was something short of what would be required, at least in that judge's mind, certainly, to say, go out and arrest this person now, as opposed to go out and search him. So they go out and search him.  And you're saying that we have to accept on faith that there was absolute probable cause knowledge that there were drugs in the apartment at that time that the police had never entered, and that the fact that this man had a key and nothing more to that apartment would be probable cause to arrest him for something without any knowledge supplied as to that? It doesn't require an absolute belief, Your Honor, just a reasonable belief. And based upon that judicial determination, plus the finding of the keys, I would suggest it was reasonable. But if we're not going to accept the probable cause at the time of the roadside detention, certainly, I think we could all agree that this was a proper Terry stop, and that the police acted reasonably. Now, a lot of the Summers cases come out of the fact where there's a search warrant, but we don't have a warrant to search the defendant's person. Where's the Terry? I mean, this is a search argument. This is a search warrant. It's not a Terry stop situation. And I didn't read anything in your brief that argued that this was a Terry stop. Well, again, I would direct the court to the motion that was filed in addition to the brief. It's definitely a proper Terry stop. And what the police officers did in this case was fix the problem that was solved by the Summers court, where there wasn't a right to detain the individual whose premises they were going to search. These officers fixed that problem. They went out and got a warrant to detain that individual. No, they got a, no. There's no such thing as a warrant to detain. There's a search warrant, and there's a arrest warrant. So they search him, and they find just the key, and then? That doesn't alleviate, though, their abilities with regard to that defendant. Once they find the keys, the probable cause or the ability to detain him at that point doesn't just go away. We know that it's proper to detain and transport suspects for a show. If you think that this search warrant would supply you with enough information to establish probable cause to arrest at the time that the key is found on him, why would it not be in the state's interest to have it remanded so that you could introduce all of that evidence and tell the trial judge why there is sufficient probable cause to arrest at the time of the stop? Because we already have a conviction, Your Honor, and the defendant hasn't met their two-pronged burden in Strickland. There's no prejudice here, because there's myriad reasons why this transportation was proper. Well, if the court, now the prejudice here is simply this, that if the trial judge found no probable cause, there's a likelihood that the court, at some further point, would determine that the statement doesn't come in. But it wouldn't have come in if there had been a motion to suppress, or it's possible it wouldn't have come in. So the prejudice is certainly there. There's a reasonable probability that this motion might have had some success. Well, I would urge this court not to put its total faith in the statement of the trial court. That was made in a complete balance. Well, I'm not really putting any faith in the statements of the trial court. We're just looking at the record. But let me ask you this. In any of the cases that you referred to us, was there any extension of Summers? And I don't want to get into the inferences you said, because those aren't in the record. The officer didn't testify about any of those facts that he must have called the other officer. Let's put those to the side. But is there any case that you cited where Summers has been extended to someone who's never, ever seen either going or coming from? Well, all those cases, Bullock, Bailey, all the federal cases involve motion hearing, where it was relevant for the officer to get up and testify. We saw him leaving the premises. And he was arrested a mile away. Here, we didn't have that. But we don't need it, because the detention and the transportation. Well, that's my question. You say you don't need it. But is there any case that you cited, I didn't think I found one, where there was no suggestion at all that someone observed this person going or coming? Not for a justification under Summers. Well, if you take the argument that counsel made, which is a reasonable thing, that there's no evidence before us that it had been anything other than days or maybe even weeks since Mr. Hill had been in those premises, maybe even longer, I don't know. Then there's certainly no case that, if it were days or weeks, that has extended Summers to that position. You'd concede that, I'm sure. I would, Your Honor. But I would emphasize, we don't need Summers to justify the police action in this case. It was a proper transportation, as I was just mentioning, in what the people cited in People versus Maxey. The court was presented with a similar situation. And Summers never came into play. Or the problem presented by Summers never came into play. Because the officers were- Are you talking about Macias? No, I'm talking, this was cited in the People's Motion. It's a case called People versus Maxey. And it authorizes the detention and transportation of a defendant for a show-up without any kind of search warrant. Well, we're familiar with those cases. If you're citing as your additional authority show-up cases, you don't need to really expound on that. Because I think everyone sitting up here is aware of that, that that's permissive. What I'm just trying to encourage this court is that we don't have to be talking as dramatically as an expansion of Summers when we can justify the police action. But the show-up has a completely different reason. You could have a felon who really did the crime running away. And the underlying basis of the detention for show-up is to try to get rid of somebody who was innocent quickly. And very importantly, continue the search for the guilty person. And that is something that really doesn't exist in this fact. Well, it's better here. No, wait, let me tell you something about why it's not better. In those show-up cases, we had an individual who had said to the police, a guy just robbed me. This is his physical description. And I just saw him running that way. The police go, find someone within a short distance in a short period of time, return that person to the victim for a show-up, for that person to say one way or the other, that's the person who robbed me. Or that's definitely not the person. Now, wait. In this case, the police had not recovered the gun. They hadn't recovered any drugs when they bring him from spot A to spot B. That's the difference  Although I think you'd probably argue, well, the search warrant said there were drugs in the house. But again, that was wrong, wasn't it? There weren't any pills recovered from that apartment. There was a gun in a box under a bed. But in the show-up cases, we have an individual who has just reported a crime. We don't have that here. We don't have someone reporting a crime. We don't even have them finding evidence. They haven't done that yet. But this is, like you say, it's better because not only do we know definitively, this is the individual who we're looking for. He said, yes, my name is Demetrius Hill. That's better than, oh, there's a random guy. But why wasn't there an arrest warrant right from the beginning? Because there were two search warrants. They were looking for the evidence because they didn't find it. They hadn't found it the time they arrested him. No, that's right. But the only difference is he has a key to the place. And as we mentioned in the defense counsel's opening argument, it's so much better to transport him back so that we don't have to make a forced entry into his building. That's essentially what they're arguing for. They could have seized the key, right, without seizing him. Sure, they could have. They let him go on his merry way, and then arrested him about 10 minutes later after they found the gun, and he makes the same statement. Well, then you're getting into the issue of whether there was actual probable cause after they found him. They found a gun in an apartment that nobody had seen him in for weeks. Well, it's just another reason why. Where three other, four other people lived, or three other people lived. Well, this court didn't believe that testimony because it did find the defendant guilty beyond a reasonable doubt. But this is just another reason why. It wasn't a question of that. It was a question of whether there was constructive possession in the judge's mind under those circumstances. And that's really not something we have to look at at this stage, is it? Not in this case. Because what the judge could have relied upon under those circumstances was the very statement that was sought to be, or should have been sought to be, suppressed by a motion. But the additional reasons. These are the additional reasons why that motion wouldn't have been granted. The trial court can speculate, well, in my mind, I think I probably thought this arrest was illegal. But if the defense wants to tie themselves to that train of thought for the trial court, then they also have to go back to the statement that the trial court also expressed that it believed it was reasonable for the defense counsel not to file this motion because there was a good reason not to. And they have to meet both Strickland prongs before we can go back to the trial court. I think there's a very good, reasonable possibility here that if the defendant isn't detained and held and arrested before the gun and the drugs are recovered, that there's a good chance that he doesn't make that statement. Because the arrest takes place without him even being there. And so the police have to go out and get him. And there's a good chance that he's not going to make that statement when the gun is recovered in an apartment that's rented by four other people or three other people. He hasn't paid any money. He hasn't paid any rent. There's no utility bills. And the gun is in an enclosed container under a bed. I think there's a good chance he doesn't make that statement. But that's, again, more of like, well, is that what the trial court would determine? Our issue is whether or not there's a reasonable probability that this motion might have succeeded. And I would argue that there's not, because there's several reasons why this transportation of the defendant was proper. This court shouldn't rule just based on what the trial court said, because it was in a vacuum. The people were afforded an opportunity to put on the testimony that they would have. And it's clear that here's the fact. And you still have that opportunity at a remand. You wouldn't be precluded from putting on any evidence. It would be simply a remand to determine whether or not the defendant should put on a motion. But if we go back and the state argues, OK, during the motion hearing, there was probable cause. If not, then it was proper under Terry. And if not, then it was proper under an extension of Summers. And if not, then there was intervening probable cause. Everything you're asking for are kind of extensions of the law, that there's really no case law to back it up, including your suggestion that there was probable cause once they secured him and took keys. There was no probable cause, because there was no fruits recovered from him. So he couldn't be arrested at that point. Now, this Terry argument is something you could, I suppose, try. But I'm not aware of, you know, I don't think you even argued this Terry stop in your brief. But this court's allowed to take, it's in the motion, Your Honor, and this court's allowed to take into consideration. But even if it's a Terry stop, all you find is the key as a result of the Terry stop. And then you can bring him to the place where the search warrant is going to be executed for, as you mentioned earlier, the proper justifications under Summers to facilitate the execution of the search warrant, prevent flight of the defendant, and protect the officers. The Summers reasons are still there. I'm just saying we don't have to expand Summers to say, well, we don't have to have testimony seeing him leaving. We've got other reasons to properly detain and transport an individual. Well, should we decide this case based on a Terry stop when the other side hasn't had an opportunity to respond to your Terry suggestion now? They did respond to it in the motion. And you could be free to ask them questions on rebuttal. But again, it's not as dramatic as expanding Summers. Defendant was properly detained and transported under a myriad of reasons that our laws allow police officers. Well, as I recall, the last time I was looking at Terry, that there had to be a reasonable suspicion that criminal activity was afoot. That's even lower than the probable cause. We don't have a record that discloses that. We have a record that says a search warrant was issued. We don't know what it was. We know it was looking for substances, controlled substances. And then we have the police stopping him. And there's no substances recovered. And there's keys. Now, I don't know that that fits into Terry, at least last time I looked. Well, pretty simply put, Your Honor, this exclusionary rule doesn't operate to deter any wrongful police conduct in this case. They acted reasonably. This motion should not and would not have been granted because the officers did seek a search warrant for his person. They transported him briefly to help them execute a search warrant for his apartment. There's nothing else the police officers could have done here, and granting this motion would have been absolutely improper. Because of that, the defendant can't show prejudice. He also can't show there was objectively unreasonable because, based upon what trial counsel knew at the time, this was a proper transportation of his client. And therefore, even the trial court stated there were reasonable reasons why he shouldn't have filed this motion. He can't meet either prong under Strickland, and a remand is completely unnecessary without taking the step of expanding Summers to include a case that doesn't include testimony about seeing the comings or goings of the defendant from his premises. Based on that, Your Honors, if there's no further questions, we would ask that you affirm the defendant's convictions. Thank you, Mr. Piotrowski. Any final words? So I just want to say I don't want to say too much about the state's argument that there was probable cause based on finding these keys on this defendant. I'll just say that it seems that they are conflating a search warrant with an arrest warrant. And the trial judge said the same thing. In the trial record, I think there's a point where he says, look, the police converted a search warrant into an arrest warrant, and they did that improperly. And I would go further and say the keys also don't support a reasonable suspicion for a Terry stop because they hadn't even searched the apartment yet. So they hadn't even found anything incriminating yet. So at least based on the facts we have in this record, I don't think that supports probable cause or a reasonable suspicion. And the state mentioned people being maxi, this show up situation. And show up detentions are justified where the police are searching for a fleeing culprit while the trail is still fresh immediately after an offense has just occurred. Clearly, this is not that situation. There was no eyewitness to any offense that's just occurred, no fleeing culprit. I don't think this can be justified as a show up situation. Regarding Summers, I think there's no case law, as you noted, there's no case law to expand Summers in the way that the state is suggesting. And I think it would be quite a bold and dramatic expansion to say that you can pluck someone off the street. It may have been weeks since they've been at this residence. At that point, you start to get away from those justifications. It ceases to have a connection with the search warrant that's being executed. So were there any further? What about the Terry Stop idea? I don't know what you said in your response to this motion because we haven't seen them yet. I'm not sure if he's referring to the Terry Stop as a show up detention. No, I think he's using it as a separate concept. OK, in that case, I don't think that the recovery of a pair of keys, I don't think that that supports a reasonable suspicion of any criminal activity. I mean, it's not there. Just because he's got a set of keys to his girlfriend's apartment, I'm not sure how that suggests any criminal activity on his part sufficient to warrant a reasonable suspicion of criminal activity that would justify a Terry Stop. Was there testimony from that officer at some point that when he did apprehend Mr. Hill, did Mr. Hill say these are the keys for that apartment or something? He said that he asked him, what are these keys for? Which apartment? And he said, it's for 4310 West, Flournoy. He didn't say it's for my apartment. This is where I live. He said it's for the address of this apartment. And you've responded in writing, so we will certainly look at the motion and the response. OK. Thank you both very much. We'll take the matter under advisement and issue a ruling in due course.